Gary Sirota (State Bar No. 136606)
Robert Berkowitz (State Bar No. 227888)
**COAST LAW GROUP, LLP**
169 Saxony Road, Suite 204
Encinitas, California 92024
Tel: (760) 942-8505
Fax: (760) 942-8515
Email: RBerkowitz@CoastLawGroup.com

Attorneys for Plaintiff,
Fractional Villas, Inc.

FILED

2008 AUG -5 PM 4: 03

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

'08 CV 1423 DMS AJB

| | |
|---|---|
| FRACTIONAL VILLAS, INC., a California corporation<br><br>    Plaintiff,<br><br>vs.<br><br>REFLECTIONS, an unknown entity; REFLECTIONS PRIVATE RESIDENCE CLUB, LLC, a Nevada limited liability company; CHRISTOPHER H. ZOCKOLL, an individual; and DOES 1 - 50,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE RELIEF FOR:**<br>1. **INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATION NO. TX-6-613-055**<br>2. **INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATION NO. TX-6-834-962**<br>3. **FEDERAL UNFAIR COMPETITION VIOLATIONS**<br>4. **CALIFORNIA STATE UNFAIR COMPETITION VIOLATIONS**<br>5. **INTENTIONAL INTERFERENCE WITH CONTRACT**<br>6. **INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONSHIP**<br><br>**DEMAND FOR TRIAL BY JURY**<br><br>Judge:<br><br>Magistrate Judge: |

Plaintiff FRACTIONAL VILLAS, INC. ("Plaintiff") alleges as follows:

## OVERVIEW

1.      This case is about copyright infringement and related wrongful acts. After spending considerable time and money developing a website and various legal documents for use in connection with Plaintiff's real estate consulting business, Plaintiff obtained federal copyright protection for these works. Subsequently, Defendants wrongfully copied Plaintiff's works to promote their real estate consulting services and caused a third party to violate various agreements between the third party and the Plaintiff. Consequently, Plaintiff filed this lawsuit to obtain judicial relief from harms that is has suffered.

## PARTIES

2.      Plaintiff FRACTIONAL VILLAS, INC. ("FVI") is, and at all relevant times was, a corporation organized and existing under the law of California and has its principal place of business in Del Mar, California. Plaintiff FVI markets, advertises, and sells fractional ownership interests in luxury properties. Plaintiff FVI's website, www.FractionalVillas.com, is a fundamental part of Plaintiff's business in that it is a primary means for promoting the Plaintiff's services.

3.      Defendant REFLECTIONS is an unknown entity with its primary business address located at, upon information and belief, 1055 Whitney Ranch Drive, Suite 210, Henderson, Nevada.  Upon information and belief, Plaintiff alleges that Defendant REFLECTIONS is doing business in several districts throughout California including, but not limited to, the Southern District of California, and is the owner and/or operator of a website located at www.time2reflect.com.

4.      Defendant REFLECTIONS PRIVATE RESIDENCE CLUB, LLC is a Nevada limited liability company with its primary business address at 1055 Whitney Ranch Drive, Suite 210, Henderson, Nevada.  Upon information and belief, Plaintiff alleges that Defendant

REFLECTIONS PRIVATE RESIDENCE CLUB, LLC is doing business in several districts throughout California including, but not limited to, the Southern District of California, and is the owner and/or operator of a website located at www.time2reflect.com.

5.    Plaintiff is informed, believes and thereon alleges that Defendant CHRISTOPHER H. ZOCKOLL is an individual residing in Las Vegas, Nevada. Plaintiff is informed, believes and thereon alleges that Defendant CHRISTOPHER H. ZOCKOLL the president of Defendant REFLECTIONS.

6.    On information and belief, Defendant CHRISTOPHER H. ZOCKOLL is the alter ego of the entities known as ZOCKOLL HOLDINGS LLC and C.H. ZOCKOLL GROUP, LLC, each of which, upon information and belief, possess a management and/or ownership interest in Defendant REFLECTIONS PRIVATE RESIDENCE CLUB, LLC.

7.    The true names and capacities, whether individual, corporate, or associate, or otherwise, of Defendant Does 1 through 25 inclusive ("DOES"), are at this time unknown to Plaintiff, who therefore identifies such Defendants by said fictitious names. Plaintiff is informed and believes and thereon alleges that said fictitiously named Defendants, and each of them, are responsible for the events and happenings herein referred to, and negligently, recklessly, and/or intentionally proximately caused the injuries and damages alleged herein to Plaintiff.

8.    Plaintiff is informed and believes and thereon alleges that at all times relevant hereto each Defendant was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship, and/or employment. Plaintiff is informed and believes and thereon alleges that at all relevant times each Defendant actively participated in or subsequently ratified or adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances including, but not limited to, full knowledge of each and all of the violations of Plaintiff's rights and the damages to Plaintiff caused thereby.

## JURISDICTION

9.     This action arises under the copyright laws of the United States, 17 U.S.C. §§ 101

et seq., and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

10.    Personal jurisdiction over Defendants is based on the Defendants' transaction of

business in this jurisdiction as recited herein and the Defendants causing foreseeable injury in

this jurisdiction as recited herein.

11.    On information and belief, personal jurisdiction in this District is proper because

Defendants knew Plaintiff's principal place of business was and is in the Southern District of

California. Defendants purposefully directed activities into the Southern District of California by

willfully disseminating over the Internet copyrighted works owned and controlled by Plaintiff

without the consent or permission of the Plaintiff, the copyright owner. Defendants also

purposefully removed the copyright notices and legends from the copyright-protected works

which specifically identified the Plaintiff's business address in Del Mar, California, which is

located in the Southern District of California.

12.    On information and belief, Defendants' illegal dissemination of Plaintiff's

copyrighted work occurred in every jurisdiction in the United States, including this one.

13.    Plaintiff's causes of action against Defendants arise directly out of Defendants'

commercial activities in the Southern District of California and Defendants' purposeful direction

of activities into the Southern District of California.

## VENUE

14.    Venue is proper in this court under 28 U.S.C. § 1391(b) and 28 U.S.C. §1400 as

Defendants have purposefully directed activities at this forum, including willfully infringing

Plaintiff's copyright with knowledge that Plaintiff's principal place of business is in the forum.

Moreover, Defendants market, advertise, and sell fractional ownership of properties to

consumers and businesses in the Southern District of California, via a website located on the

Internet and the use of a toll-free telephone number, meant to attract/entice residents outside of Defendants' home state of Nevada.

## ALLEGATIONS IN SUPPORT OF ALL CLAIMS

### Infringement of the Website Copyright

15.     Plaintiff FVI is the owner of Copyright Registration No. TX-6-613-055, entitled "Fractional Villas.com website (www.fractionalvillas.com)" (the "Website Copyright"). A true and correct copy of the registration is attached hereto as Exhibit "A" and incorporated herein by reference. The Website Copyright was filed October 11, 2007, and the registration is effective the same date. The Website Copyright pertains to a website offering fractional ownership in luxury properties. Both the website content and source code are contained in, and the subject of, the Website Copyright.

16.     The work protected by Copyright Registration No. TX-6-613-055 (the "Website Content") is a work of authorship fixed in a tangible medium of expression that contains a substantial amount of material created by the skill, labor, and judgment of Mr. Robert K. Vicino, the President of Plaintiff. The Work was first published on October 5, 2007.

17.     The Website Content is a derivative work of prior versions, all of which were authored by Mr. Vicino and portions of which were first published at least as early as March 27, 2005.

18.     The Website Content appears on the FVI website. A copyright notice is clearly and conspicuously displayed on each page. The vast majority of the Website Content has appeared on the FVI website since August 2005.

19.     All rights of Website Copyright were transferred solely and exclusively by Mr. Vicino to Plaintiff FVI.

20.    Plaintiff FVI has complied in all respects with the Copyright Laws of the United States and received from the Register of Copyrights the certificate of registration for Copyright No. TX-6-613-055.

21.    Defendants have infringed Plaintiff's copyright by using portions of the Website Content in Defendants' Internet sites and/or Internet sites under Defendants' dominion and control, and/or by distributing portions of the Website Content to Defendants' own customers, thereby reproducing, publicly performing, and/or creating derivative works of the Website Content, without the consent of Plaintiff FVI.

22.    Defendants do not have permission or license from Plaintiff to use any portion of the Website Content protected by the Website Copyright.

23.    Defendants' infringement is exacerbated by the fact that the infringing website was indexed by major search engines and broadcast worldwide in response to key word searches. Defendant's infringement of the Website Copyright has diverted potential customers away from Plaintiff FVI's Internet site, because Defendants posted portions of the copyrighted Website Content on the website http://www.time2reflect.com to earn income from the sale of fractional ownership in luxury properties.

24.    Plaintiff has been damaged and continues to be damaged by Defendants' infringement.

25.    Plaintiff alleges that Defendants are aware their actions infringe United States Copyright Registration No. TX-6-613-055.  Nevertheless, Defendants have blatantly usurped Plaintiff's concept and materials and claimed such as their own.

**Infringement of the Agreement Copyright**

26.    Plaintiff FVI is the owner of Copyright Registration No. TX 6-834-962, entitled "Priority Purchaser Reservation Agreement" (the "Agreement Copyright").  A true and correct

copy of the Certificate of Registration is attached hereto as Exhibit "B." The Copyright was filed on March 25, 2008, and the registration is effective the same date.

27.    The work protected by Copyright Registration No. TX 6-834-962 (the "Reservation Agreement") is a work of authorship fixed in a tangible medium of expression that contains a substantial amount of material created by the skill, labor, and judgment of Mr. Vicino, the President of Plaintiff. The Reservation Agreement was first published on December 23, 2005 and has been used by Plaintiff FVI in its business related to fractional ownership in luxury properties since that time.

28.    All rights of Agreement Copyright were transferred solely and exclusively by Mr. Vicino to Plaintiff FVI.

29.    Plaintiff FVI has complied in all respects with the Copyright Laws of the United States and received from the Register of Copyrights the certificate of registration for Copyright No. TX 6-834-962.

30.    Defendants have infringed Plaintiff's copyright by using significant portions of the Reservation Agreement in documents used in Defendants' own transactions involving fractional ownership of luxury properties, by claiming ownership of documents nearly identical to the Reservation Agreement, by placing Defendants' logo, name and address on documents nearly identical to the Reservation Agreement, and/or creating derivative works of the Reservation Agreement, without the consent of Plaintiff FVI.

31.    Defendants do not have permission or license from Plaintiff to use any portion of the Reservation Agreement protected by the Agreement Copyright.

32.    Plaintiff has been damaged and continues to be damaged by Defendants' infringement.

33.    Plaintiff alleges that Defendants are aware their actions infringe United States Copyright Registration No. TX 6-834-962. Nevertheless, Defendants have blatantly usurped Plaintiff's concept and materials and claimed such as their own.

**Infringements of Other Agreements**

34.    In or about October of 2007, William Clapperton, Managing Partner of Aqua Surf LLC ("Aqua Surf"), the owner of the real property at 2663 Ocean Front Walk, #3 San Diego, California (the "Ocean Front Walk Property"), began discussions with Plaintiff FVI regarding consultation services for the fractional sale of the Ocean Front Walk Property and other properties.

35.    On or about November 1, 2007, William Clapperton on behalf of Aqua Surf entered into an Exclusive Consulting Agreement (the "Consulting Agreement") with Plaintiff FVI regarding development, preparation, and marketing of the Ocean Front Walk Property for fractional sale. The Consulting Agreement contains an exclusivity provision lasting until May 1, 2008, and a consulting fee provision granting Plaintiff FVI a commission on any sale of the Ocean Front Walk Property; both provisions survive termination of the Consulting Agreement. A true and correct copy of the Consulting Agreement is attached hereto as Exhibit "C."

36.    On or about November 1, 2007, William Clapperton of behalf of Aqua Surf (collectively "Owner") entered into a Confidential Non Disclosure Agreement (the "Owner NDA") with Plaintiff FVI for the protection of all of Plaintiff FVI's confidential and trade secret information, including specifically forms, documents, contracts, research methods, methods of compiling real estate information, methods of creating a consultant database, procedures, computer models, etc. related to the fractional sale of the Ocean Front Walk Property (collectively, "Confidential Information"). A true and correct copy of the Owner NDA is attached hereto as Exhibit "D."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

37.    On or about November 1, 2007, William Clapperton, along with Love and Clapperton Coastal Properties, a California licensed real estate broker (collectively "Broker") entered into a Confidential Non Disclosure Agreement (the "Broker NDA") with Plaintiff FVI for the protection of all of Plaintiff FVI's confidential and trade secret information, including specifically forms, documents, contracts, research methods, methods of compiling real estate information, methods of creating a consultant database, procedures, computer models, etc. related to the fractional sale of the Ocean Front Walk Property (collectively, "Confidential Information"). A true and correct copy of the Broker NDA is attached hereto as Exhibit "E."

38.    On or about November 1, 2007, Broker, represented by sales agent Chris Love ("Listing Agent"), entered into a Broker Cooperation Agreement ("Broker Agreement"), wherein the Broker agreed to cooperate with FVI in the development and marketing of the Ocean Front Walk Property for fractional sale and to disclose all prospective leads to FVI. A true and correct copy of the Broker Agreement is attached hereto as Exhibit "F."

39.    On information and belief, in or about November of 2007, Defendants contacted William Clapperton directly regarding the fractional sale of the Ocean Front Walk Property.

40.    On information and belief, in or about November of 2007, Defendants induced Broker to breach the Broker Agreement and to fail to disclose Defendants' interest in the Ocean Front Walk Property for Defendants' own benefit.

41.    On information and belief, in or about November of 2007, Defendants encouraged or otherwise induced the Broker and Listing Agent to breach the Broker NDA with Plaintiff FVI and provided Defendants with Plaintiff FVI's Confidential Information for Defendants' own benefit.

42.    On information and belief, in or about November of 2007, Defendants encouraged or otherwise induced the Owner to breach the Owner NDA with Plaintiff FVI and to provide Defendants with FVI's Confidential Information for Defendants' own benefit.

43.    On information and belief, in violation of the NDA, Broker, Listing Agent, and/or Owner allowed Defendants access to Plaintiff FVI's Confidential Information, including the copyright-protected Reservation Agreement, which Defendants have infringed and used as their own since at least March 26, 2008.

44.    On information and belief, in or about November of 2007, Defendants encouraged or otherwise induced Aqua Surf to breach its Consulting Agreement with Plaintiff FVI and to hire Defendants as consultants regarding development, preparation, and marketing of the Ocean Front Walk Property for fractional sale.

45.    On information and belief, the Ocean Front Walk Property was sold, and all consulting fees and/or commissions were paid to Defendants.

46.    Prior to Defendants' interference with Plaintiff FVI's existing contracts with Aqua Surf and with Broker, Plaintiff FVI was engaged in discussions with Aqua Surf to enter into consulting agreements for other properties owned by Aqua Surf. Defendants' unlawful and improper actions have interfered with and irreparably damaged Plaintiff FVI's prospective economic relations with Aqua Surf regarding consulting services for the fractional sale of any of its other properties.

47.    Defendants are Plaintiff's competitors. Plaintiff and Defendants complete for business in the market of fractional ownership in luxury properties.

48.    Defendants' intentional and illegal acts have caused Plaintiff to suffer, and to continue to suffer, substantial damages.

## FIRST CAUSE OF ACTION:

## INFRINGEMENT OF U.S. COPYRIGHT NO. TX-6-613-055

## AS AGAINST ALL DEFENDANTS

49.    Plaintiff incorporates by reference the paragraphs as set forth above.

50.     Plaintiff FVI is the owner of the Website Copyright, the Website Content, and all rights appurtenant thereto.

51.     Defendants have infringed Plaintiff's Website Copyright by using portions of the Website Content on Defendants' website (located at http://www.time2reflect.com) without Plaintiff's consent.

52.     On information and belief, Plaintiff alleges that Defendants' infringement, inducement of infringement, and/or contributory infringement of the Copyrights has been willful, deliberate, knowing, and with wanton disregard of Plaintiff's ownership of the Copyrights.

53.     On information and belief, Plaintiff alleges that Defendants will continue to infringe, continue to induce others to infringe, and/or continue to contributorily infringe the Copyright to Plaintiff's irreparable damage unless enjoined by the court.

54.     Plaintiff has been damaged by the foregoing infringing acts of Defendants in an amount that exceeds $150,000 for each infringement.  The exact amount of such damages can be determined upon an accounting.

## SECOND CAUSE OF ACTION:

## INFRINGEMENT OF U.S. COPYRIGHT NO. TX-6-834-962

## AS AGAINST ALL DEFENDANTS

55.     Plaintiff incorporates by reference the paragraphs as set forth above.

56.     Plaintiff FVI is the owner of the Agreement Copyright, the Reservation Agreement, and all rights appurtenant therto.

57.     Defendants have infringed Plaintiff's Agreement Copyright by copying, distributing, modifying, creating derivative works of, and/or using as their own the Reservation Agreement without Plaintiff's consent.

58.     On information and belief, Plaintiff alleges that Defendants' infringement, inducement of infringement, and/or contributory infringement of the Agreement Copyright has

been willful, deliberate, knowing, and with wanton disregard of Plaintiff's ownership of the Agreement Copyright.

59.    On information and belief, Plaintiff alleges that Defendants will continue to infringe, continue to induce others to infringe, and/or continue to contributorily infringe the Agreement Copyright to Plaintiff's irreparable damage unless enjoined by the court.

60.    Plaintiff has been damaged by the foregoing infringing acts of Defendants in an amount that exceeds $150,000 for each infringement.  The exact amount of such damages can be determined upon an accounting.

## THIRD CAUSE OF ACTION:
## UNFAIR COMPETITION VIOLATIONS
## AS AGAINST ALL DEFENDANTS

61.    Plaintiff incorporates by reference the paragraphs as set forth above.

62.    Plaintiff is informed and believes and on that basis alleges that Defendants' intentional infringement of the Agreement Copyright constitutes unfair competition under 15 U.S.C. §1125(a).

63.    Plaintiff alleges that Defendants' infringing use of the Reservation Agreement is a false designation of origin and false and misleading representation of fact.

64.    Upon information and belief, Plaintiff alleges that Defendants' infringing use of the Reservation Agreement is likely to cause confusion, cause mistake, or to deceive as to the affiliation, connection or association of Defendants with Plaintiff, or as to the sponsorship or approval of Defendants and Defendants' services by Plaintiff.

65.    Upon information and belief, Plaintiff alleges that Defendants' infringement of the Agreement Copyright and other unfair, deceptive and fraudulent business practices have been willful, deliberate, knowing, and made with wanton disregard of Plaintiff's ownership of the Agreement Copyright and the origin of the Reservation Agreement.

66.     Defendants' unlawful, unfair, deceptive and fraudulent business practices constitute despicable, outrageous, oppressive, and malicious conduct under California Civil Code § 3294, and thereby justifies an award of exemplary and punitive damages against Defendants as federal law allows for the importation of state punitive damages statutes where the federal claim is tortious in nature.

67.     By reason of the conduct alleged herein, Defendants are guilty of malice, oppression, and willful disregard of the rights of Plaintiff.

68.     As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff has sustained and will sustain injury to its business in an amount not yet precisely ascertainable but including the loss of sales, reputation, and goodwill.

## FOURTH CAUSE OF ACTION:

## CALIFORNIA UNFAIR COMPETITION VIOLATIONS

## AS AGAINST ALL DEFENDANTS

69.     Plaintiff incorporates by reference the paragraphs as set forth above.

70.     Plaintiff is informed and believes and on that basis alleges that Defendants' intentional infringement of the Website Copyright constitutes unlawful, unfair, and/or fraudulent business acts or practices, and constitutes unfair competition under state law, including without limitation Cal. Business & Professions Code §§ 17200 et seq.

71.     Plaintiff is informed and believes and on that basis alleges that Defendants' intentional infringement of the Agreement Copyright constitutes unlawful, unfair, and/or fraudulent business acts or practices, and constitutes unfair competition under state law, including without limitation Cal. Business & Professions Code §§ 17200 et seq.

72.     Plaintiff is informed and believes and thereon alleges that Defendants' improper and unlawful acts as alleged herein constitute unfair, deceptive, untrue, and misleading advertising, in that Defendants represent to the public that the website

http://www.time2reflect.com is comprised of unique material, does not give credit to Plaintiff for the Website Content, and does not acknowledge Plaintiff's ownership of the Website Copyright.

73.     Plaintiff is informed and believes and thereon alleges that Defendants' improper and unlawful acts as alleged herein constitute unfair, deceptive, untrue, and misleading advertising, in that Defendants represent to the public that the content of Defendants' reservation agreement document is comprised of unique material, does not give credit to Plaintiff for Plaintiff's Reservation Agreement, and wrongfully attempts to assert an ownership interest in the Plaintiff's Reservation Agreement and Agreement Copyright.

74.     By reason of the conduct alleged herein, Defendants are guilty of malice, oppression, and willful disregard of the rights of Plaintiff FVI.

75.     Defendants' unlawful, unfair, deceptive, and fraudulent business practices and unfair, deceptive, untrue, and misleading advertising constitute despicable, outrageous, oppressive, and malicious conduct under California Civil Code § 3294 and justify and award of exemplary and punitive damages against Defendants.

76.     As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff FVI has sustained and will sustain injury to its business and property in an amount not yet precisely ascertainable, but which includes the loss of sales of fractional ownership interests in luxury properties and loss of reputation and goodwill, and which is expected to exceed $150,000 for each infringement.

## FIFTH CAUSE OF ACTION:
## INTENTIONAL INTERFERENCE WITH CONTRACT
## AS AGAINST ALL DEFENDANTS

77.     Plaintiff incorporates by reference the paragraphs as set forth above.

78.     On or about November 1, 2007, Plaintiff and Aqua Surf entered into a written Consulting Agreement whereby Plaintiff agreed to provide certain consulting services regarding

development, marketing, and preparation for fractional sale of the Ocean Front Walk Property, and Plaintiff FVI agreed to provide such serves on an exclusive basis, from November 1, 2007 through May 1, 2008, with terms of payment as follows: Aqua Surf to pay FVI a consulting fee equal to ten percent of the total consideration paid by the fractional interest buyers; if the Ocean Front Walk Property is sold to a single buyer referred by Plaintiff FVI, Aqua Surf to pay Plaintiff FVI 25% of the listing commission paid to the Broker for sale of the Ocean Front Walk Property. A true and correct copy of the Consulting Agreement is attached hereto as Exhibit "C."

79.    On or about November 1, 2007, Plaintiff FVI and Aqua Surf entered into the Owner NDA for the protection of all of Plaintiff FVI's confidential and trade secret information, including specifically forms, documents, and contracts provided to Aqua Surf related to the fractional sale of the Ocean Front Walk Property. A true and correct copy of the Owner NDA is attached hereto as Exhibit "D."

80.    On or about November 1, 2007, Plaintiff FVI and Broker entered into the Broker NDA for the protection of all of Plaintiff FVI's confidential and trade secret information, including specifically forms, documents, and contracts provided to Broker related to the fractional sale of the Ocean Front Walk Property. A true and correct copy of the Broker NDA is attached hereto as Exhibit "E."

81.    On or about November 1, 2007, Plaintiff FVI and Broker entered into a Broker Cooperation Agreement ("Broker Agreement"), wherein the Broker agreed to cooperate with Plaintiff FVI in the development and marketing of the Ocean Front Walk Property for fractional sale and to disclose all prospective leads to Plaintiff FVI. A true and correct copy of the Broker Agreement is attached hereto as Exhibit "F."

82.    On information and belief, Defendants knew of the above described contracts existing between Plaintiff FVI and Aqua Surf and between FVI and Broker, in that Defendants contacted Broker based on information gathered from an MLS listing. On information and

belief, Defendants spoke with William Clapperton and/or Chris Love directly, representing both Aqua Surf and the Broker, who discussed the Consulting Agreement, the Owner NDA, the Broker NDA, and the Broker Agreement with Defendants.

83.     On information and belief, in or around November of 2007, Defendants had a telephone meeting with William Clapperton and/or Chris Love, during which Defendants falsely represented that Defendants had more experience than Plaintiff FVI in the development and marketing of homes for fractional sale, and that they would provide the same services for a lower fee, all with the intent to harm Plaintiff financially and to induce Aqua Surf breach its Consulting Agreement with FVI.

84.     On information and belief, in or around November of 2007, Defendants had a telephone meeting with William Clapperton and/or Chris Love, during which Defendants falsely represented that Defendants had more experience than Plaintiff FVI in the development and marketing of homes for fractional sale, and that they would provide the same services for a lower fee, all with the intent to harm Plaintiff financially and to induce Broker breach its Broker Agreement with Plaintiff FVI.

85.     On information and belief, in or around November of 2007, Defendants had a telephone meeting with William Capperton and/or Chris Love, during which Defendants requested copies of all documents and forms provided to Aqua Surf and to Broker by Plaintiff FVI, including those documents that Defendants were aware constituted Confidential Information protected by the Owner NDA and Broker NDA, with the intent to harm Plaintiff financially and to induce both Aqua Surf and Broker to breach their respective NDAs with Plaintiff FVI. On information and belief, Defendants have continued to use Plaintiff FVI's Confidential Information, including documents, forms, methods, and procedures, in violation of the Owner NDA and Broker NDA, at least as recently as June 1, 2008.

86.     As a proximate result of Defendants' conduct and the breach of the aforementioned agreements by Aqua Surf and by Broker, Plaintiff FVI has suffered damages not yet ascertainable but expected to exceed $500,000.

87.     The aforementioned acts of Defendants, and each of them, were willful and malicious.  Plaintiff FVI is therefore entitled to punitive damages.

## SIXTH CAUSE OF ACTION:
## INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONSHIP
## AS AGAINST ALL DEFENDANTS

88.     Plaintiff incorporates by reference the paragraphs as set forth above.

89.     In or about October of 2007, Plaintiff FVI also began discussions with Aqua Surf regarding consultation services for the fractional sale of one property in addition to the Ocean Front Walk Property.

90.     On information and belief, in or about November of 2007, Defendants encouraged or otherwise induced Aqua Surf to breach its existing Consulting Agreement with Plaintiff FVI for consulting services regarding development, preparation, and marketing for fractional sale of the Ocean Front Walk Property, and to hire Defendants to provide the same services for the Ocean Front Walk Property, and for any of Aqua Surf's other properties.

91.     Defendants knew of the above described business relationship existing between Plaintiff FVI and Aqua Surf, and between Plaintiff FVI and Broker, in that William Clapperton and/or Chris Love discussed these relationships with Defendants by phone in or about November of 2007.

92.     After inducing or otherwise encouraging Aqua Surf and Broker to breach their respective agreements with Plaintiff FVI, Defendants encouraged Aqua Surf to use Defendants' services in place of Plaintiff FVI's services.  On information and belief, Defendants have also encouraged Broker to recommend to others wishing to hire a consultant for fractional sale of

their properties to use Defendants' services, and to specifically recommend against using Plaintiff FVI's services.

93.    Defendants' use of the Reservation Agreement, as alleged above, constitutes infringement of Plaintiff FVI's Copyright and unfair competition under 15 U.S.C. §1125(a) and Cal. Business & Professions Code §§ 17200 et seq.

94.    Consequently, Aqua Surf cancelled the existing Consulting Agreement with Plaintiff FVI and terminated all negotiations related to Aqua Surf's other properties.

95.    As a proximate result of Defendants' conduct, the cancellation and breach of the Consulting Agreement and the severance of contract negotiations by Aqua Surf, and the breach of the NDA by Broker, Plaintiff FVI has suffered damages not presently ascertainable but expected to exceed $1,000,000.

96.    The aforementioned acts of Defendants, and each of them, were willful and malicious. Plaintiff FVI is therefore entitled to punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays this court enter judgment against Defendants as follows:

1.    For a temporary restraining order, preliminary and permanent injunction enjoining and restraining Defendants and all persons acting in concert with it from reproducing, distributing, adapting, creating derivative works of, displaying, or performing any materials that are substantially similar to the Plaintiff's copyrighted works, or which by imitation or other similarity are likely to cause confusion, mistake, dilution, or persons to be deceived into believing that Defendants' services are Plaintiff's, or that Defendants and their services are authorized, endorsed, or sponsored by Plaintiff, and to deliver to the Court for destruction or other reasonable disposition all such materials and means for producing same in Defendants' possession or control.

2.     That a judgment be entered that Defendants have infringed, actively induced others to infringe, and/or contributorily infringed U.S. Copyright Registration No. TX-6-613-055 and TX-6-834-962;

3.     That a judgment be entered that Defendants be required to pay over to Plaintiff all damages sustained by Plaintiff due to Defendant's intentional, willful, and malicious infringements, and such damages as this court shall deem just and proper under the Copyright Act, 17 U.S.C. §504, but not less than $150,000 for each separate infringement of Plaintiff's copyright;

4.     That all gains, profits, and advantages derived by Defendants from the acts of infringement, unfair competition, interference with contract, interference with economic relationship, and other violations of law be deemed held in constructive trust for the benefits of Plaintiff;

5.     That Defendants account to Plaintiff for profits and any damages sustained by Plaintiff arising from the foregoing acts of infringement and other violations of law;

6.     That punitive damages be awarded;

7.     That costs and prejudgment interest be awarded on all damages;

8.     That Plaintiff be awarded its attorneys' fees as available under the Copyright Act, 17 U.S.C. §§ 505 and California Business & Professions Code §§ 17200 et seq.

9.     That Defendants be required to file with the court within 30 days after entry of final judgment of this cause a written statement under oath setting forth the manner in which Defendants have complied with final judgment;

10.    That Plaintiff be awarded such other and further relief as the court deems appropriate.

Dated: August 5, 2008                          **COAST LAW GROUP, LLP**

Robert Berkowitz
Attorneys for Plaintiff,
FRACTIONAL VILLAS, INC.
RBerkowitz@CoastLawGroup.com

EXHIBIT  A

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

REGIST **TX 6-613-055**

EFFECTIVE DATE OF REGISTRATION

Month **Oct** Day **11** Year **2007**

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

**TITLE OF THIS WORK ▼**
FractionalVillas.com website (http://www.fractionalvillas.com)

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    **Title of Collective Work ▼**

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

---

**2**

**a** **NAME OF AUTHOR ▼**
Robert K. Vicino

**DATES OF BIRTH AND DEATH**
Year Born ▼ 1953    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶ USA

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No    If the answer to either of these questions is "Yes," see detailed instructions.
Pseudonymous? ☐ Yes ☒ No

**NOTE**

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Internet website including all associated pages, text, photographs, design, code, and graphics.

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b** **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No    If the answer to either of these questions is "Yes," see detailed instructions.
Pseudonymous? ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c** **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No    If the answer to either of these questions is "Yes," see detailed instructions.
Pseudonymous? ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**

**a** **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
2007 ◀ Year

**b** **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶ October    Day ▶ 5    Year ▶ 2007    Nation

---

**4**

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
**Fractional Villas, Inc.**
985 Jeffrey Road
Del Mar, CA 92014

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
Transfer of all rights of copyright to Fractional Villas, Inc. by Robert K. Vicino. The company is majority owned by Robert K. Vicino.

See instructions before completing this space.

APPLICATION RECEIVED
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
OCT 1 1 2007

FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page. • See detailed instructions. • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of __ pages

*Amended by CO Authority Telephone Call on 10/25/07 with Robert K. Vicino.

**Amended by CO per email received on 10/25/07 from Robert K. Vicino.

| EXAMINED BY | CJVint | FORM TX |
|---|---|---|
| CHECKED BY | | |
| ☐ CORRESPONDENCE ☐ Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☒ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▶          Year of Registration ▶

**5**

**DERIVATIVE WORK OR COMPILATION**
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

Prior versions of the http://www.fractionalvillas.com website, which was first published on March 27, 2005

**a**

**6**

See instructions before completing this space.

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

Numerous html code, text, design, graphic, photographic and layout modifications have been made and updated since the original publication, on an ongoing and continuous basis.

**b**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                          Account Number ▼

**a**

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼

Fractional Villas, Inc., Attn: Robert K. Vicino
985 Jeffrey Road
Del Mar, CA 92014

**b**

Area code and daytime telephone number ▶ 619-252-8311                    Fax number ▶ 858-228-1772
Email ▶ rvicino@fractionalvillas.com

**CERTIFICATION** I, the undersigned, hereby certify that I am the
Check only one ▶
☒ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Robert K. Vicino                                          Date ▶ 10/05/2007

Handwritten signature ▼

| Certificate will be mailed in window envelope to this address: | Name ▼ Robert K. Vicino |
|---|---|
| | Number/Street/Apt ▼ 985 Jeffrey Road |
| | City/State/Zip ▼ Del Mar, CA 92014 |

YOU MUST
• Complete all necessary spaces
• Sign your application in space 8
SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material
MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue SE
Washington, DC 20559-6222

**9**

*17 USC §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

**TX 6-834-962**

**Effective date of
registration:**

March 25, 2008

---

## Title ──────────────

**Title of Work:** Priority Purchaser Reservation Agreement

## Completion/ Publication ──────────

**Year of Completion:** 2005

**Date of 1st Publication:** December 23, 2005       **Nation of 1st Publication:** United States

## Author ──────────────

- **Author:** Robert Keith Vicino

**Author Created:** text

**Work made for hire:** No

**Citizen of:** United States       **Domiciled in:** United States

**Year Born:** 1953

## Copyright claimant ──────────

**Copyright Claimant:** Fractional Villas, Inc.

CA, 92014, United States

**Transfer Statement:** Transfer of all rights of copyright to Fractional Villas, Inc. by Robert Keith
Vicino.

## Rights and Permissions ──────────

**Organization Name:** Fractional Villas, Inc.

**Name:** Robert K. Vicino

**Address:** 985 Jeffrey Road

Del Mar, CA 92014 United States

## Certification ──────────────

**Name:** Robert Keith Vicino

**Date:** March 25, 2008

---

**EXHIBIT C**

## EXCLUSIVE CONSULTING AGREEMENT
### (FRACTIONAL OWNERSHIP PROPERTY)

This EXCLUSIVE CONSULTING AGREEMENT (hereinafter referred to as the "Agreement") is made and entered this **1st** day of November **2007**, by and between Aqua Surf LLC, the owner(s) of the below described property, (hereinafter collectively and individually referred to as the "**Owner**"); and, **Fractional Villas, Inc**, a California Corporation, (hereinafter referred to as the "**Consultant**"), subject to the following recitals and agreements:

A.  Owner wishes to sell all or a portion of the real property described as that certain real property located at: **2663 Ocean Front Walk #3, San Diego, CA 92109**, consisting of approximately **1804** square feet of residential living area, and further legally described as: **APN 423-761-01-00, 2663 Ocean Front Walk #3, San Diego, CA 92109**, together with its furnishings, fixtures, and appurtenances (hereinafter referred to as the "**Property**") as a Fractional Ownership Property as defined herein below (the "Fractional Ownership Property"). The Fractional Ownership Property shall be owned by one or more buyers (the "Fractional Interest Buyer"), who will each own an undivided interest (the "**Undivided Interest**") in the form of either: 1) an undivided interest in the Property; or 2) an interest in the legal entity that purchases the Fractional Ownership Property. The price and terms of the sale of each of the Undivided Interest(s) shall be as further determined by the Owner, with consideration of the advice of the Consultant, which may change from time to time subject to market and business conditions.

B.  Consultant is a California Department of Real Estate Corporate Licensee specializing in the development for sale of fractional ownership properties in the United States and Mexico. Owner wishes to hire Consultant, and Consultant is willing to provide consulting services and advice (the "Consulting Services") to Owner so that Owner may sell the Property as a Fractional Ownership Property according to the terms and conditions set forth in this Agreement.

NOW THEREFORE it is hereby mutually agreed to by both Owner and Consultant as follows:

1.  "Fractional Ownership Property" shall be defined herein as any real property where a purchaser receives all incidences of ownership in that Property with the right to exclusive use or occupancy of the Property on some periodic basis. A Fractional Ownership Property may comprise a portion of the Property and shall include, but not be limited to, any time-share estate, interval ownership, right to revolving use of the Property, fractional ownership, vacation license, vacation lease, club membership, time-share use, or uses of a similar nature as defined in Section 11004.5 of the California Business and Professions Code in the Property.

2.  Owner hereby grants to Consultant the exclusive right to consult with Owner with respect to the Owner's marketing and selling fractional ownership interests in the Property as a Fractional Ownership Property, for a period commencing on **11/01/07**, and ending on **5/01/08**, (hereinafter referred to as the "Consulting Period "), unless this Agreement is extended in writing and signed by both Owner and Consultant, or as may be extended pursuant to the further terms and conditions provided for in this Agreement.

3.  The Consulting Period, and any extensions thereto, shall be automatically extended for **three (3)** months if the Fractional Ownership Property receives a minimum of **six (6)** bona fide and fully executed Reservation Agreements, and or, Purchase and Sale Agreements for the purchase of Undivided Interest(s) in the Fractional Ownership Property.

4.  If during the Consulting Period any negotiation(s) have commenced and are continuing between Owner and any potential prospective Fractional Interest Buyer(s), then the term of the Consulting Period shall be automatically extended until the date which such negotiation(s), or any resulting escrow(s) for the purchase of any Undivided Interest(s) resulting from such negotiation(s) is concluded or are terminated.

5. Owner shall pay Consultant a consulting fee equal to Ten percent (10%) of the total consideration paid for all the Undivided Interest(s) in the Fractional Ownership Property by the Fractional Interest Buyer(s), as and when each escrow is closed between the Owner and the Fractional Interest Buyer(s), (hereinafter referred to as the "Consulting Fee"). Said amount shall be irrevocably assigned to the Consultant with an instruction to the Escrow Holder for any escrow between the Owner and the Fractional Interest Buyer(s) upon the opening and signing of any escrow instructions for said escrow(s). Should it be required that the Consulting Fee be paid through the Owner's Broker, then Owner agrees to execute, and to instruct Owner's Broker to execute, all such documents as may be required to affect the payment of the Consulting Fee in this manner. Owner shall also pay the Consulting Fee on any shares that Owner elects to withhold from sale, or decides to keep from the total inventory of Undivided Interest(s), for Owner's personal or direct ownership, or any shares that Owner has deeded in Owner's name, or any entity associated with Owner.

6. Throughout the term of this Agreement, or any extension hereof, Owner shall have the right to sell the Property to any single buyer, or any legal entity, that does not intend to either further sell or use the Property as a Fractional Ownership Property, without the obligation to pay the Consultant any fee as provided for in Paragraph Number 5 herein. However, should any such buyer of the Property, have been referred by Consultant to either Owner, or Owner's Broker, then Owner hereby agrees, a) to require Owner's Broker, with an amendment to the Broker's listing agreement, to pay Consultant, 25% of the listing commission paid to Broker for sale of the Property; or, b) to pay Consultant's broker of record 25% of the commission set forth in the current listing agreement in place between Owner and Owner's Broker as of the date of this Agreement.

7. It is understood by both Owner and Consultant that Consultant is not providing any real estate brokerage services to the Owner under the scope of this Agreement, that this Agreement is not a listing to sell the Property, and that the Owner has independently engaged the services of a licensed real estate broker, with a listing to sell the Property. Any such real estate services for which a license is required shall be provided to Owner by Love and Clapperton Coastal Properties, a licensed California real estate broker, (hereinafter referred to as the "Broker") subject to a separate Listing Agreement or Exclusive Authorization and Right to Sell (Residential Listing Agreement) between the Owner and the Broker. Owner agrees to maintain a listing with a licensed real estate broker throughout the term of this Agreement.

8. Consultant shall assist the Owner and the Broker, as an advisor to the Owner and the Broker, in the negotiations with the Fractional Interest Buyer(s), for the purchase and sale of the Undivided Interest(s) in the Fractional Ownership Property.

9. It is understood by both the Owner and the Consultant, that Consultant makes no representation of, or warranty as to, the legality, viability, marketability and or sale of the Undivided Interest(s) in the Fractional Ownership Property, nor any guarantee of the Consultants performance under this Agreement.

10. Consultant shall be granted oversight control over the Fractional Ownership Property, including the marketing, promotion and sales program.

## Duties and Responsibilities of Consultant

11. In exchange for the Consulting Fee, Consultant shall, as Consultant deems appropriate and subject to Consultant's sole discretion, provide some or all of the following consulting, advisory, promotion, and marketing services to the Owner for the Fractional Ownership Property, based on Consultant's opinion and expertise, (hereinafter referred to as the "Consulting Services"):

   A. Determination of the viability and suitability of the Property as a Fractional Ownership Property.
   B. Analysis of local market conditions, area competition & vacation home ownership alternatives.



C.   Evaluation of zoning issues and requirements for the Fractional Ownership Property.
D.   Evaluation of neighborhood concerns for the Fractional Ownership Property.
E.   Evaluation of the appropriate number of Undivided Interest(s) and the pricing schedule for each share of the Fractional Ownership Property.
F.   Evaluation of the present Property condition and making of recommendations for the appropriate decoration, furnishings, modifications, improvements and repairs to made to the Property.
G.   Development of the Fractional Ownership Property name and a logo to brand the Property.
H.   Preparation of a marketing and sales plan for the sale of the Undivided Interest(s) in the Fractional Ownership Property.
I.   Preparation of an advertising and promotion plan for the Fractional Ownership Property.
J.   Design and preparation of all sales and marketing materials for the Fractional Ownership Property.
K.   Placement of advertising in local, national & internet media for the Fractional Ownership Property.
L.   Direction and management of the local promotion and sale of the Undivided Interest(s) in the Fractional Ownership Property.
M.   Provision of Fractional Villas Open House signage to the Owner and the Broker for use in open house events at the Property.
N.   Assistance with the development of documents necessary for the ongoing operation of the Fractional Interest Property, including the establishment of a Home Owners Association (HOA), the Rules & Regulations, the Bylaws, the operating budgets, the Reservation Policy and structure, the title documents, future Maintenance Plan, and the appropriate property and liability insurance coverage and policy for the Fractional Ownership Property.
O.   Preparation of a pro forma financial analysis for the Fractional Ownership Property.
P.   Assistance with the identification of issues regarding possible violations of and compliance with any Covenants, Conditions and Restrictions (CC&R's) as a result of the planned Fractional Ownership Property.
Q.   Assistance with the identification of the appropriate state and local permits for the Fractional Ownership Property and assisting the Owner in obtaining those permits, and/or approvals that the Owner and Consultant mutually agree should be obtained for the sale of the Undivided Interest(s).
R.   Coordination with Owners Attorney for the preparation of a comprehensive proprietary legal document package of all legal documents for the sale of the Undivided Interest(s) in the Fractional Ownership Property, including:

a) Comprehensive Rules & Regulations for use of the Property.

b) Articles of Incorporation for any Home Owners Association (HOA), or a Limited Liability Company in certain jurisdictions.

c) Declaration of Covenants, Conditions & Restrictions (CC&R's)

d) Association Bylaws

e) Department of Real Estate applications for permit and or clearance documents

f) Undivided Interest(s) Reservation Agreement

g) Undivided Interest(s) Purchase and Sale Agreement

h) Bill of Sale for all personal property to be transferred with the Property

i) Undivided Interest(s) Grant Deed, or equivalent

j) Appropriate legal disclosures for the sale of Undivided Interest(s) in the Fractional Ownership Property

k) Third party and or Fractional Villas, LLC, Property Management Agreements for the ongoing management of all owner reservations,

property maintenance and repairs, bookkeeping and accounting, landscaping and housekeeping services, budgeting, bill payments, annual HOA tax returns and desired "concierge services".

S.  Development of the Undivided Interest owner reservation and scheduling system in the Fractional Ownership Property.

T.  Direction and assistance to the Owner and the Broker with all Reservation, Purchase and Sales Agreements for sale of the Undivided Interest(s) in the Fractional Ownership Property.

U.  Oversight and coordination of all escrows and sales of the Undivided Interest(s) in the Fractional Ownership Property.

V.  Identifying and establishing appropriate "fractional interest" mortgage lenders and arranging for share owner financing of the Undivided Interest(s) in the Fractional Ownership Property.

W.  Negotiation of the appropriate property & liability insurance coverage policy for the Fractional Ownership Property.

X.  Preparation of the initial annual operating budgets and management guidelines for the HOA.

Y.  Assistance with the selection and contracting of local maintenance services for the HOA.

Z.  Evaluation for the placement of the Property in a third party exchange program, and or inclusion in any owner exchange program operated by Fractional Villas, Inc. for the Fractional Ownership Property.

AA. Training and coaching for the Owner and the Broker on the marketing, sale and legal structure for the Fractional Ownership Property.

12. Consultant will design, prepare, produce and place all advertising and promotion in media and the internet that Consultant determines to be appropriate for the Fractional Ownership Property.  It is understood by the Owner that in some cases Consultant's advertising and promotion may be generic for all of Fractional Villas, Inc. Fractional Ownership Properties, as Consultant shall deem appropriate.

13. Consultant shall provide Owner, or Broker, with master copies of promotional materials created and designed by Consultant, for reproduction by the Owner, or Broker to be distributed at the Property.

14. Any Property specific advertising, including signage, display advertising, and other media exclusively for the promotion of the Fractional Ownership Property shall be subject to further written agreement by both Owner and Consultant, and shall include an agreement for any sharing of the costs.

15. In its sole discretion, Consultant shall provide Owner and Broker any qualified prospect leads that Consultant generates for the Fractional Ownership Property.

16. Consultant shall respond to all inquiries received from prospects interested in purchasing an Undivided Interest(s) in the Fractional Ownership Property.  Owner shall instruct and assure that Broker shall, in cooperation with Consultant, also respond to all inquiries received by prospects, which may be interested in purchasing an Undivided Interest(s) in the Fractional Ownership Property in a timely manner.

17. Consultant is authorized by Owner to advertise and promote the Property and the Fractional Ownership Property, as Consultant deems appropriate in its sole and absolute discretion, with respect to the objective of this Agreement. Consultant shall use various marketing methods and resources, including but not limited to, property signage, internet advertising and promotion, brochures, flyers, direct and email marketing, personal networking, assistance with Property open house events, private Property tours, cross-promotion with Consultant's other Fractional Ownership properties, media and news releases, hosted events and parties, area broker open houses, special events, video presentations, and Property photography.

18. Subject to the further mutual agreement of the Consultant, the Owner, and the HOA for the owners of the Undivided Interest(s) in the Fractional Ownership Property, Consultant shall provide either some, or

all, of the future management services for the Fractional Ownership Property, including: owner reservations, property maintenance and repairs, bookkeeping and accounting, landscaping and housekeeping services, budgeting, bill payments, annual HOA tax returns and any desired "concierge level services".

19. Consultant agrees to cooperate with other consultants, attorneys, accountants and or advisors, working for, and or representing the Owner with regard to the Property and the Fractional Ownership Property, provided Owner shall be responsible for all costs and fees charged by Owner's consultants, attorneys, accountants and or advisors for any such consultations.

## Duties and Responsibilities of Owner

20. Owner and Consultant shall review the Property's condition, decoration, furnishings, fixtures and equipment; and mutually determine and agree on what inspections, changes, improvements and or repairs should be made, if any, to the Property to prepare it for sale as the Fractional Ownership Property, (hereinafter the "Improvements"). Said Improvements shall collectively be completed to Consultant's approval prior to the commencement of the marketing and sales program for the Fractional Ownership Property. All "agreed to' Improvements shall be made and paid for at the Owner's sole expense, as and when due. It is understood, that the Owner is not obligated to agree to make any Improvements, other than those mutually agreed to by Owner and Consultant.

   (i)   Should Owner determine in Owner's sole discretion to not undertake and pay for the agreed to Improvements, or not commence best efforts to undertake the agreed to improvements within ten (10) days of any review and agreement between Consultant and Owner, as to the nature and scope of Improvements to be made, either party may terminate this Agreement upon five (5) days written notice to the other. Paragraphs 2, 5, and 6 survive any termination of this Agreement under this Paragraph.

   (ii)  Owner shall, in good faith, prevent the Recordation of any Mechanic's Lien against the Title of the Property arising out of any work or material supplied to the Property concerning or related to works of improvement at the Property under this Paragraph.

21. Owner shall maintain the Property, and all utilities, during the term of this Agreement in the same condition as it is upon the date that all agreed improvements and repairs, if any, are completed.

22. Owner shall make all payments for the ongoing operation and ownership of the Property during the term of this Agreement, including the payment of and for any Notes, mortgage(s), assessments, fees, fines, dues, maintenance, insurance, utilities, property taxes, and or repairs required subject to any property inspection or pest inspection generated between Owner and the Fractional Interest Buyers.

23. Owner agrees to cooperate with Consultant throughout the term of this Agreement in the marketing and sale of the Property as a Fractional Ownership Property, including but not limited to: providing Consultant with access to the Property; responding to all Fractional Interest Buyer(s) offers to purchase an Undivided Interest(s) in the Property; executing any agreed to escrow instructions and other related escrow documents between the Owner and the Fractional Interest Buyer(s) as and when due; and closing all escrows pursuant to any Purchase and Sale Agreements for the purchase of Undivided Interest(s) in the Fractional Ownership Property.

24. Owner shall establish the minimum number of Undivided Interests in the Property (which amount may be the full number of Undivided Interests being offered) that must be under contract and in escrow to purchase the Property, and the outside date by which all of the conditions to closing must be satisfied.



as a presale condition for closing all initial escrows, (hereinafter referred to as the "Presale Condition Closing Date"). The Presale Condition Closing Date shall be the date upon which all of the conditions to closing are satisfied, and, when Owner can convey at least  six (6) Undivided Interests in the Property.   The Purchase and Sale Agreements for the purchase of Undivided Interest(s) in the Fractional Ownership Property between the Owner and Fractional Interest Buyer(s) shall provide for this Presale Condition Closing Date, and provide that if this presale closing condition has not been met, or occurred within One Hundred and Eighty Days (180) days after the date Owner executes each Purchase and Sale Agreement, then Buyer, or Owner may terminate the Purchase and Sale Agreement(s) with an immediate refund of all deposit monies paid and held in escrow, and with no further obligation of Owner or Buyer to either purchase or sell any of the Undivided Interests in the Property.

25.  Owner agrees to conduct all negotiations for the purchase of the Undivided Interests in the Property through Broker and to keep Consultant apprised of all progress of such negotiations.

26.  Owner agrees to direct its Broker to cooperate in good faith with Consultant in the marketing and promotion of the Fractional Ownership Property; and to assure that Broker will represent Owner in good faith and a commercially reasonable manner in the pursuit of all Fractional Interest Buyer prospects, and the negotiation of the purchase and sale of all Undivided Interests in the Property, with the direction and support of the Consultant  Owner shall also direct its Broker to meet with Consultant as needed to learn from Consultant and obtain a comprehensive understanding of the specifics and nuances of the Fractional Ownership Property to a level of competence that Broker is able to professionally communicate the ownership and use structure and provisions of the Fractional Ownership Property to prospective Fractional Interest Buyer(s).

27.  Owner agrees to instruct Broker to provide Consultant with copies of all statutorily required documents related to the sale of the Property.

28.  Owner agrees to obtain any necessary and appropriate modifications, or amendment to the listing agreement between the Owner and the Broker, to assure the Broker's agreement to work with the Consultant in good faith toward the goal of this Agreement to sell the Undivided Interest(s) in the Property.  Said agreement with Broker shall include; the requirement to additionally promote the offering as a Fractional Ownership Property in all Broker advertising and Multiple Listing Service listings for the Property; a requirement for Broker to staff and conduct any agreed to open houses for the Property on a schedule of days and time frames, to respond to any and all Fractional Interest Buyer(s) inquiries and or offers to purchase an Undivided Interest(s) in the Property; to cooperate with any Fractional Interest Buyer(s) agents, or brokers, representing such potential Fractional Interest Buyer(s); to use commercially reasonable marketing methods and resources for the ongoing sale and promotion of the Fractional Ownership Property, including but not limited to, maintaining Property signage; reproducing and providing an adequate supply of brochures, flyers, and other promotional or informative materials from any masters produced by the Consultant for the Fractional Ownership Property; performing direct and email marketing, personal networking with other area brokers and licensed agents, providing private Property tours, and conducting area broker open houses.

29.  Owner shall direct its Broker to, and it is a condition of this Agreement that Broker does sign a Confidential Non Disclosure Agreement with Consultant for the protection of all of Consultant's confidential and trade secret information.

30.  Consultant herein advises Owner that the Law Firm, Coast Law Group, LLP; attention Gary L. Sirota, Esq., (760) 942-8505, possesses and maintains all specimen documents necessary for the resolution and proper sale of a Fractional Interest Property.  Consultant makes no warranties regarding the performance of the Coast Law Group, LLP.  At the appropriate future date that the Owner is confident in the viability of the sale of the Undivided Interest(s) in the Fractional Interest Property, the Owner shall directly hire an attorney (hereinafter the "Owner's Attorney"), to prepare and review all documents for the Fractional Interest Property, the title report for the Property, any Covenants, Conditions and



Restrictions on the Property, relevant local and state ordinances and regulations, and to provide a comprehensive final document package for the Fractional Interest Property. Owner shall be responsible to pay all fees agreed to between the Owner and the Owner's Attorney, directly to the Owner's Attorney, as and when due. Consultant makes no representation or warranty as to the total cost of any fees to be charged to the Owner, by the Owner's Attorney, nor does Consultant have any responsibility to pay, or provide a credit from the Consulting Fee for any portion of the Owner's Attorney's fee. All additional legal documents that are not a part of Coast Law Group's standard specimen package of Fractional Ownership Property legal documents that may be desired or required for this matter, including the formation of a new owner's legal entity to collectively hold title to the Property, such as a Limited Liability Company, or a Limited Liability Partnership shall be provided by the Owner's Attorney and shall be additionally paid for by the Owner, at the actual cost charged by any legal professionals preparing said documents. The Owner shall also pay any fees or costs for the organization and filing of any such entities with either the state or federal agencies.

31. Owner shall pay all homeowner association fees (if any), local area, town, or city, and or state application, license and or permit, costs, fees or taxes that may be required to be paid for permitting, or approving the sale of the Fractional Ownership Property.

32. At the close of each escrow for the Undivided Interest(s) in the Property, Owner shall pay from funds supplied by the Fractional Interest Buyer(s), all Owners share of: closing costs, other usual and customary Owner charges, any real property documentary transfer tax, the premium for title insurance, non-recurring closing costs, including, without limitation, any assessments, any real property taxes, any governmental fees or special assessments (if not part of the assessments), any Broker commissions, the Consulting Fee, escrow fees, inspection costs, permits, any town, city, county, or state fees or charges; and or any other customary fees due under and for the sale of the Undivided Interest(s) in the Property.

33. Except as disclosed in an addendum hereto signed by both Owner and Consultant, Owner hereby warrants and represents to Consultant that, (1) Owner has the legal authority to execute this Exclusive Consulting Agreement, (2) Owner has the right to sell the Property, (3) no person or entity has any right to lease, sublease, or purchase the Property from Owner or to acquire any interest therein by virtue of any agreement, option or right of first refusal with Owner, (4) Consultant has not made any promises or representations to or agreements with Owner not contained herein which in any manner affect Owner's and Consultant's rights and obligations under this Agreement.

34. CONSULTANT MAKES NO WARRANTIES REGARDING THE SUITABILITY, VIABILITY, OR LEGALITY OF THE FRACTIONAL INTEREST PROPERTY AND/OR THE CONSULTANT'S PERFORMANCE PURSUANT TO THIS AGREEMENT. CONSULTANT DISCLAIMS ALL WARRANTIES, OTHER THAN THOSE EXPRESSLY STATED HEREIN, WITH REGARD TO SERVICES RENDERED UNDER THIS AGREEMENT, INCLUDING ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. OWNER SHALL EXTEND NO WARRANTIES OR GUARANTEES IN THE NAME OF CONSULTANT OR WHICH WOULD BIND CONSULTANT WITH RESPECT TO THE PERFORMANCE, DESIGN, QUALITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OF THE SERVICES. IN NO EVENT WILL CONSULTANT BE LIABLE FOR, AND OWNER HEREBY WAIVES ANY RIGHT TO ANY CONSEQUENTIAL, INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR EXEMPLARY DAMAGES WHATSOEVER, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOSS OF PROFITS OR BUSINESS INTERRRUPTION INCURRED BY THE OWNER ARISING OUT OF THIS AGREEMENT, EVEN IF CONSULTANT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE LIMIT OF CONSULTANT'S LIABILITY (WHETHER IN CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY IN TORT OR BY STATUTE OR OTHERWISE) IN ANY MANNER RELATED TO THIS AGREEMENT, FOR ANY AND ALL CLAIMS, SHALL NOT IN THE AGGREGATE EXCEED THE FEES CONSULTANT RECEIVED UNDER THIS AGREEMENT. BOTH PARTIES ACKNOWLEDGE THAT THE FOREGOING LIMITATION IS AN ESSENTIAL ELEMENT OF THE AGREEMENT BETWEEN

THE PARTIES AND THAT IN THE ABSENCE OF SUCH LIMITATIONS THE PRICING AND THE OTHER TERMS SET FORTH IN THIS AGREEMENT WOULD BE SUBSTANTIALLY DIFFERENT.

35.  Consultant shall have no obligation to exclusively present Fractional Interest Buyer prospects to the Property, and shall have no restriction to present other fractional interest properties to such prospects.

36.  Owner shall indemnify and hold Consultant, its employees, agents, officers, directors and shareholders harmless of and from any and all liabilities, judgments, obligations, claims, causes of action, suits, deficiencies, damages, losses and expenses (including reasonable attorneys' fees) for which Consultant may become liable or may incur or be compelled to pay in any action or claim against Consultant arising from or in connection with Owner's breach of any of Owner's warranties, representations, covenants, duties or obligations contained in this Agreement or any act or omission of Owner or any of Owner's representatives, agents, or employees.

37.  If there is a failure to make any payment of the Consulting Fee at the time required herein, the delinquent sum(s) shall bear interest at the maximum non-usurious rate permitted by law.

38.  The Parties agree that all information provided by Consultant pursuant to this Agreement and any business relationship arising out of or relating hereto is neither legal advice, nor tax advice, nor intended to be legal advice or tax advice, but instead is solely related to business and/or real estate issues.  The parties agree that Consultant shall not provide, or be obligated to provide, any legal, accounting, or tax advice under the duties and responsibilities of this Agreement.  If Owner desires such legal or tax advice it shall consult with an appropriate professional.

39.  Owner acknowledges that Owner has read this Agreement in its entirety, and has either: 1) had legal and financial counsel review the Agreement, explain its provisions and provide appropriate advice; or 2) knowingly waived the opportunity for such review because Owner is confident that Owner is sufficiently knowledgeable about such matters that Owner is fully apprised of any and all risks associated with this Agreement. Owner is advised to seek expert professional legal, accounting and tax advice from his own legal and tax advisors.  Certain aspects and decisions made under this Fractional Ownership Property may have significant legal and tax implications to the Owner, which may only be considered and determined appropriate by the Owner and his professional legal and tax advisors.

40.  The provisions hereto duly bind the heirs, transferees, successors and assigns of the parties hereof.  It is understood that it is illegal for Owner to refuse to present or sell any real property to any person because of race, color, religion, national origin, sex, marital status, age or physical disability.

41.  Owner hereby warrants to Consultant that if Owner is a corporation as executed below that said corporation is a duly authorized and organized corporation in good standing under the laws of the State of California

42.  Time is of the essence in the performance of this Agreement.

43.  No amendments to or modifications of this agreement shall be valid or binding unless made in writing and signed by both Owner and Consultant. Any purported amendment, modification or termination of this agreement which is oral, or which is in writing but not signed by both Owner and Consultant, shall be void and of no effect whatsoever.

44.  Owner acknowledges receipt of a copy of this Agreement, which Owner has read and understands. Any notice by either party to the other shall be made to the parties address as listed below by certified U.S. Mail service, Courier or any other recognized express package delivery service requiring proof of delivery of such notice.

FV INC/CONSULTING AGR. 021207

45. Owner and Consultant agree that the validity, construction, and performance of this Agreement is governed by the laws of the State of California, and that suit or claim may be brought only in the County of San Diego, State of California to enforce the terms of this Agreement.

46. No Joint Venture. Nothing in this Lease shall be construed to render or constitute Owner in any way or for any purpose a partner, joint venturer or associate in any relationship with Consultant other than that as Consultant and Owner, nor shall this Agreement be construed to authorize either party to act as agent for the other party except as expressly provided to the contrary in this Agreement.

47. The parties intend that this Agreement is the final expression of their agreement and represents the entirety of the agreement between the parties hereto. It shall be deemed to supersede any prior discussions between the parties hereto. The parties herby agree that no parole evidence shall be admissible to vary or contradict the plain meaning of the terms and language used herein.

The undersigned parties hereby agree to the terms and conditions as provided above.

**Owner:**

By: _____    Date: 4/15/07

William Clapperton, Managing Partner

By: _____    Date: _____

**Consultant:**

By: _____    Date: 1-26-07

Robert K. Vicino
President
Fractional Villas, Inc.
985 Jeffrey Road
Del Mar, CA 92014

## NON-DISCLOSURE, NON-CIRCUMVENTION, and
## CONFIDENTIALITY AGREEMENT

This agreement (the "Agreement") is made and entered this 1st day of November 2007, by and between **Aqua Surf LLC**, the owners of the below described property, (hereinafter referred to as the "Owner"); and, **Fractional Villas, Inc**, a California Corporation, (hereinafter referred to as the "Consultant"), subject to the following recitals and agreements:

**RECITALS**

**Whereas**, in anticipation of and/or during the course of Consultant's consulting relationship with the Owner (the "Term"), Owner will have access to proprietary, confidential, or trade secret information, data, and/or materials of the Consultant.

**Whereas**, Consultant has a vital interest in maintaining the confidential nature of its confidential information and trade secrets, as well as rights to inventions, because doing so is to Consultant's strategic advantage and enhances the value of the Consultant's business.

**Whereas**, the property shall be described as: the real property described as that certain real property located at: 2663 Ocean Front Walk #3, San Diego, CA 92109 consisting of approximately 1804 square feet of residential living area, and further legally described as: APN 423-761-01-00, 2663 Ocean Front Walk #3, SanDiego, CA92109, hereinafter referred to as the "Property").

NOW, THEREFORE, the parties agree as follows:

1. Confidential Information.

   a) Owner acknowledges and agrees that Owner has and will have access to and will come into contact and learn various technical and non-technical trade secrets ("Trade Secrets") and other confidential information, that are the property of the Consultant (collectively, the "Confidential Information"). Consultant and Owner acknowledge and agree that Owner is being provided access to such Trade Secrets and Confidential Information, subject to and solely based upon Owner's agreement to the covenants set forth in this Agreement and Owner would not otherwise be afforded access to such information.

   b) Confidential Information related to the sale, ownership and use of undivided interests in real property includes, but is not limited to: (i) forms, documents, contracts, research methods, methods of compiling real estate information, methods of creating Consultant's database, procedures, devices, data processing programs, software, computer models, and other means used by the Consultant in the conduct of its business; (ii) product formulations, strategies and plans for future business, new business, product or other development, new and innovative product ideas, potential acquisitions or divestitures, and new marketing ideas; (iii) information with respect to costs, commissions, fees, profits, sales, markets, sales methods and financial information; (iv) mailing lists, the identity of Consultant's customers, advisors, representatives, distributors, and suppliers and their names and addresses, the names of potential buyers and their agents and/or brokers, the amounts paid by such individuals to Consultant, specific needs and requirements of such individuals, and leads and referrals to prospective property purchasers; (v) the structure, sequence, and organization of the Consultant's services; and (vi) the identity of the Consultant's consultants, their respective salaries, bonuses, benefits, qualifications and abilities; all of which information Owner acknowledges and agrees is not generally known or available to the general public, but has been developed, compiled or acquired by the Consultant at great effort and expense.

   c) Confidential Information can be in any form; oral, written or machine readable, including electroniclities.



d) For purposes of this Agreement, the definition of the "Owner" includes, if applicable, the Owner, its parent, its subsidiaries, and its parent's wholly owned subsidiaries.

e) "Confidential Information" shall not include information that (a) was in the public domain when the disclosing party granted access to the receiving party; (b) entered the public domain through no fault of the receiving party subsequent to receipt; (c) was in a receiving party's possession free of any obligation of confidence at the time of the disclosure by the disclosing party; (d) was rightfully communicated by a third party to a receiving party free of any obligation of confidence subsequent to the time of the originating party's communication thereof to the receiving party; (e) was developed by employees or agents of a party independently of and without knowledge or reference to any Confidential Information; (f) is approved for release by written authorization from the originating party; or (g) is required to be disclosed pursuant to any statute, law, rule or regulation of any governmental authority or pursuant to any order of any court of competent jurisdiction, but in any case, the originating party will be immediately notified by the receiving party before disclosure and given a reasonable opportunity to obtain a protective order or other form of protection.

## 2. Prohibited Uses of Confidential Information.

Owner agrees to treat all Confidential Information in a secret and confidential manner and agrees not to reproduce or copy any of such Confidential Information without the Consultant's written consent.

## 3. Non-Disclosure.

a) Owner agrees that it will not, without the prior written consent of the Consultant, directly or indirectly: (i) disclose or divulge any of the Confidential Information to any person, entity, or firm, unless compelled by governmental process; or (ii) use any Confidential Information in any manner other than to facilitate the sale of Owner's property as contemplated and agreed between Consultant and Owner in that certain Exclusive Consulting Agreement.

b) Owner agrees that, given the nature of the real estate business and Consultant's business plans, there will never come a time when disclosure of the Confidential Information would not be seriously damaging to the Consultant.

c) Owner agrees to provide such reasonable assistance as may be required by the Consultant to maintain the secrecy and confidentiality of the other's Confidential Information.

## 4. Return of Confidential Information

Owner agrees that, upon termination of this Agreement and the related business relationship between the parties for any reason or at any other time that the Consultant so requests, Owner will deliver to the Consultant, within 7 (seven) days, all of the Consultant's Confidential Information, all property of the Consultant that is in the Owner's possession or control, and all copies thereof.

## 5. Remedies.

The parties hereto agree that, in the event of breach or threatened breach of any covenants of Owner, the damage or imminent damage to the value and the goodwill of the Consultant's business shall be inestimable, and that therefore any remedy at law or in damages shall be inadequate. Accordingly, the parties hereto agree that the Consultant shall be entitled to injunctive relief against and specific performance against Owner in the event of any breach or threatened breach of any of such provisions by Owner, in addition to any other relief (including damages) available to the Owner or Consultant under this Agreement or under law.



6.  Covenant Against Competitive Services and Circumvention.

   a)  During the Term of this Agreement, and for a period of three years following its termination, Owner shall not, without first formally retaining the services of Consultant:

      i)  Sell any undivided interests in the Property—or any interests in any legal entity that Owner may now own, or that may be established in the future to own the Property—wherein the promotion and sale of the Property is as a Fractional Ownership Property or similarly structured ownership scheme. Should Owner violate this provision of this Agreement, calculating the damage to Consultant's business shall be difficult to calculate. Thus, the parties agree that, as liquidated damages, Owner shall pay Consultant 10% (ten percent) of the gross proceeds of sale of the Property in the event that Owner violates this provision.

      ii)  Sell any undivided interests in any property (other than the Property)—or any interest in any legal entity that Owner may now own, or that may be established in the future to own said property—wherein the promotion and sale of the property is as a Fractional Ownership Property or similarly structured ownership scheme. Should Owner violate this provision of this Agreement, calculating the damage to Consultant's business shall be difficult to calculate. Thus, the parties agree that, as liquidated damages, Owner shall pay Consultant 10% (ten percent) of the gross proceeds of sale of the property in the event that Owner violates this provision.

   b)  Owner herein agrees that Owner currently has no specific and working knowledge with respect to the creation of, marketing and selling of property as a Fractional Ownership Property or similarly structured ownership scheme. Furthermore, Owner agrees that for Owner to engage in the sale of property in such a manner during the Term of this Agreement and for a period of three years thereafter constitutes and admission by Owner that Owner has used Consultant's Confidential Information and/or Trade Secret information.

7. Covenant Against Interference.

   Owner agrees that during such time as Consultant is working with Owner and a period of one year thereafter, Owner will not, either voluntarily or involuntarily, for any reason whatsoever, directly or indirectly, individually or on behalf of others, raid, interfere with, or otherwise disrupt the relationship between Consultant and any of its employees, independent contractors, or agents. Consultant and Owner acknowledge that in the event of a breach of this Section by Owner, the Consultant will suffer irreparable harm and will be entitled to injunctive relief as well as all other remedies available at law or in equity.

8. Covenant Against Derogatory Statements.

   Owner agrees not to make and/or publish in any manner, any derogatory or adverse statements, written or verbal, regarding the Consultant or its owners, directors, officers, employees, independent contractors, agents, affiliates, successors and/or assigns, except as permitted by law, to anyone including, but not limited to the other's (or its successors and/or assigns) directors, officers, consultants, agents, vendors, existing clients, or potential clients.

9.  Reasonableness of Restrictions.

   Owner and Consultant acknowledge that the Consultant's market for its products and services is unlimited geographically and that the restrictions set forth in this Agreement are reasonably necessary for the protection of the Consultant's legitimate propriety and economic interests.



10. Modification of Agreement.

   This Agreement may be modified only upon the written consent of both Consultant and the Owner.

11. Entire Agreement.

   This Agreement constitutes the entire agreement between the parties concerning the matters expressly set forth herein. There are no agreements, understandings, restrictions, warranties, or representations between the parties relating to this subject matter other than those in this Agreement.

12. Severability.

   If any term or provision of this Agreement or any portion thereof is declared illegal or unenforceable by any court of competent jurisdiction, such provision or portion thereof shall be deemed modified so as to render it enforceable, and to the extent such provision or portion thereof cannot be rendered enforceable, this Agreement shall be considered divisible as to such provision which shall become null and void, leaving the remainder of this Agreement in full force and effect.

13. Governing Law.

   This Agreement shall in all respects be governed by and construed in accordance with the laws of the State of California regardless of the law of choice of law or conflicts of law of that or any other jurisdiction. Both parties agree to the exclusive jurisdiction and venue of the federal and state courts of San Diego County, California, with respect to any legal actions arising under, out of, in relation to, or brought to enforce, this Agreement.

14. Assignment and Successors.

   Consultant and Owner agree that the terms of this Agreement shall inure to the benefit of and may be enforced by the Owner and Consultant and the Owner's and Consultant's successors or assigns. Consultant and Owner agree that the terms of this Agreement shall be binding upon Consultant and Consultant and Owner and Owner's subsidiaries, parent corporations, executors, administrators, legatees, distributees, and other successors in interest.

15. Payment of Costs and Attorneys' Fees.

   A party who breaches the terms of this Agreement shall pay to the non-defaulting party all of the non-defaulting party's costs and expenses, including attorneys' fees, incurred in enforcing the terms of the Agreement.

16. Opportunity for Review by Owner's Outside Counsel.

   Consultant and Owner acknowledges that Consultant and Owner have read this Agreement in its entirety, and have had ample opportunity to have legal and financial counsel review the Agreement, explain its provisions, and provide appropriate advice. The Parties agree that all information provided by Consultant pursuant to this Agreement and any business relationship arising out of or relating hereto is neither legal advice, nor intended to be legal advice, but instead is solely related to business and/or real estate issues.

17. Waiver of Breach.

   The waiver by either party of a breach of any provisions of this Agreement by the other shall not operate or be construed as a waiver of any subsequent breach. A delay or failure by either party to exercise a right under this Agreement, or a partial or single exercise of that right, shall not constitute a waiver of that or any other right.

18. Obligations Survive Termination.

The obligations of Consultant and Owner set forth in this Agreement shall survive the termination of the parties' working relationship.  This agreement may not be terminated without the express written consent by both parties.

19. Notices.

All notices given hereunder will be in writing, delivered personally or mailed by registered or certified mail, return receipt requested, or delivered by well-recognized overnight mail.

If such notice is being delivered to the Consultant, such notice shall be delivered to Fractional Villas, Inc., c/o Gary Sirota, Esq., Coast Law Group, LLP, 169 Saxony Road, Suite 204, Encinitas, California 92024, or to such other address as either party may specify to the other from time to time.

If such notice is being delivered to the Owner, such notice shall be delivered to:

Aqua Surf LLC

3865 Mission Blvd

San Diego, CA 92109

All notices will be deemed given if delivered personally, on the day of delivery, if mailed by registered or certified mail, three days after the date of mailing, and if delivered by overnight mail, one day after mailing.

I have read and do hereby agree to be bound by the terms of this Agreement.

Owner:

By: _____                    Date: 4/27/07

William Clapperton, Managing Partner

By: _____                    Date: _____

Address:      3865 Mission Blvd
              San Diego, CA 92109

Phone:        858-581-5683

Consultant:

By: _____                    Date: 11-26-07

Robert K. Viciho
President
Fractional Villas, Inc.
985 Jeffrey Road
Del Mar, CA 92014

**EXHIBIT E**

## NON-DISCLOSURE, NON-CIRCUMVENTION, and
## CONFIDENTIALITY AGREEMENT

This Agreement is dated as of **November 01, 2007**, (hereinafter the "Effective Date") by and between **Fractional Villas, Inc.** a California Corporation, and a California Department of Real Estate Corporate Licensee (hereinafter known as "Fractional Villas" and/or "Consultant"); and, **William Clapperton, Love and Clapperton Coastal Properties**, a California licensed real estate broker (hereinafter known as "Listing Broker", of the property located at: **2863 Ocean Front Walk #3, San Diego, CA 92109** (hereinafter known as the "Property"), subject to the following recitals and agreements:

### RECITALS

1.  WHEREAS Fractional Villas is not a listing brokerage, does not list properties for sale, and is only interested in offering the owner (hereinafter known as "Seller") of the Property, turn-key expertise and consulting services to sell the Property, in cooperation with the Listing Broker, as a fractional ownership property, consisting of undivided interests to be held by more than one buyer (hereinafter referred to as the "Fractional Interest Buyer(s)") in all or a portion of the Property, (hereinafter collectively referred to as the "Undivided Interest(s)").

2.  WHEREAS Listing Broker has an active, exclusive right to sell the Property (hereinafter known as "Exclusive Listing"), under an agreement between the Listing Broker and the Seller.

3.  WHEREAS Listing Broker is interested in introducing Fractional Villas to the Seller.

4.  WHEREAS, in anticipation of and/or during the course of Consultant's consulting relationship with the Seller (the "Term"), Broker will have access to proprietary, confidential, or trade secret information, data, and/or materials of the Consultant.

5.  WHEREAS Consultant has a vital interest in maintaining the confidential nature of its confidential information and trade secrets, as well as rights to inventions, because doing so is to Consultant's strategic advantage and enhances the value of the Consultant's business.

NOW, THEREFORE, the parties agree as follows:

1.  Confidential Information.

    a) Broker acknowledges and agrees that Broker has and will have access to and will come into contact and learn various technical and non-technical trade secrets ("Trade Secrets") and other confidential information, that are the property of the Consultant (collectively, the "Confidential Information"). Consultant and Broker agree that Broker is being provided access to such Trade Secrets and Confidential Information, subject to and solely based upon Broker's agreement to the covenants set forth in this Agreement and Broker would not otherwise be afforded access to such information.

    b) Confidential Information includes, but is not limited to: (i) forms, documents, contracts, research methods, methods of compiling real estate information, methods of creating Consultant's database, procedures, devices, machines, equipment, data processing programs, software, computer models, research projects, and other means used by the Consultant in the conduct of

BROKER'S INITIALS: _____          CONSULTANT'S INITIALS _____

its business; (ii) product formulations, strategies and plans for future business, new business, product or other development, new and innovative product ideas, potential acquisitions or divestitures, and new marketing ideas; (iii) information with respect to costs, commissions, fees, profits, sales, markets, sales methods and financial information; (iv) mailing lists, the identity of Consultant's customers, distributors, and suppliers and their names and addresses, the names of potential buyers and their agents and/or brokers, the amounts paid by such individuals to Consultant, specific needs and requirements of such individuals, and leads and referrals to prospective property purchasers; (v) the structure, sequence, and organization of the Consultant's services; and (vi) the identity of the Consultant's consultants, their respective salaries, bonuses, benefits, qualifications and abilities; all of which information Broker acknowledges and agrees is not generally known or available to the general public, but has been developed, compiled or acquired by the Consultant at great effort and expense.

c) Confidential Information can be in any form: oral, written or machine readable, including electronic files.

d) For purposes of this Agreement, the definition of the "Broker" includes, if applicable, the Listing Broker, and any agent that has placed it license with the Broker.

e) "Confidential Information" shall not include information that (a) was in the public domain when the disclosing party granted access to the receiving party; (b) entered the public domain through no fault of the receiving party subsequent to receipt; (c) was in a receiving party's possession free of any obligation of confidence at the time of the disclosure by the disclosing party; (d) was rightfully communicated by a third party to a receiving party free of any obligation of confidence subsequent to the time of the originating party's communication thereof to the receiving party; (e) was developed by employees or agents of a party independently of and without knowledge or reference to any Confidential Information; (f) is approved for release by written authorization from the originating party; or (g) is required to be disclosed pursuant to any statute, law, rule or regulation of any governmental authority or pursuant to any order of any court of competent jurisdiction, but in any case, the originating party will be immediately notified by the receiving party before disclosure and given a reasonable opportunity to obtain a protective order or other form of protection.

2.  Prohibited Uses of Confidential Information.

    Broker agrees to treat all Confidential Information in a secret and confidential manner and agrees not to reproduce or copy any of such Confidential Information without the Consultant's written consent.

3.  Non-Disclosure.

    a) Broker agrees that it will not, without the prior written consent of the Consultant, directly or indirectly: (i) disclose or divulge any of the Confidential Information to any person, entity, or firm, unless compelled by governmental process; or (ii) use any Confidential Information in any manner other than to facilitate the sale of Seller's Property.

    b) Listing Broker agrees that, given the nature of the real estate business and Consultant's business plans, there will never come a time when disclosure of the Confidential Information would not be seriously damaging to the Consultant.

BROKER'S INITIALS _____    CONSULTANT'S INITIALS _____

c) Listing Broker agrees to provide such reasonable assistance as may be required by the Consultant to maintain the secrecy and confidentiality of the other's Confidential Information.

4. Return of Confidential Information.

Listing Broker agrees that, upon termination of this Agreement and the related business relationship between the parties for any reason or at any other time that the Consultant so requests, Listing Broker will deliver to the Consultant, within 7 (seven) days of written demand by Consultant, all of the Consultant's Confidential Information, all other property of the Consultant that is in the Listing Broker's possession or control, and all copies thereof.

5. Remedies.

The parties hereto agree that, in the event of breach or threatened breach of any covenants of Listing Broker, the damage or imminent damage to the value and the goodwill of the Consultant's business shall be inestimable, and that therefore any remedy at law or in damages shall be inadequate. Accordingly, the parties hereto agree that the Consultant shall be entitled to injunctive relief against and specific performance against Listing Broker in the event of any breach or threatened breach of any of such provisions by Listing Broker. In addition to any other relief (including damages) available to the Listing Broker or Consultant under this Agreement or under law.

6. Covenant Against Circumvention.

a) During the Term of this Agreement, and for a period of three years following its termination, Listing Broker shall not, without first formally retaining the services of Consultant:

   i) Sell any undivided interests in the Property—or any interests in any legal entity that is established, or that may be established in the future to own the Property—wherein the promotion and sale of the Property is as a Fractional Ownership Property or similarly structured ownership scheme. Should Listing Broker violate this provision of this Agreement, calculating the damage to Consultant's business shall be difficult, if not impossible to calculate with certainty. Thus, the parties agree that, as liquidated damages, Listing Broker shall pay Consultant 10% (ten percent) of the total sale price for all Fractional Interests available in the Property in the event that Listing Broker violates this provision.

   ii) Sell any undivided interests in any property (other than the Property)—or any interest in any legal entity that is established, or that may be established in the future to own said property—wherein the promotion and sale of the property is as a Fractional Ownership Property or similarly structured ownership scheme where ten (10) or less fractional ownership interests are available or sold in a single family residence. Should Listing Broker violate this provision of this Agreement, calculating the damage to Consultant's business shall be difficult or impossible to calculate with certainty. Thus, the parties agree that, as liquidated damages, Listing Broker shall pay Consultant 10% (ten percent) of the total sale price for all Fractional Interest available in the property in the event that Listing Broker violates this provision.

b) Listing Broker herein agrees that Listing Broker currently does not have adequate knowledge or expertise to professionally market and sell property as a Fractional Ownership Property or

similarly structured ownership scheme. Furthermore, Listing Broker agrees that for Listing Broker to engage in the sale of property in such a manner during the Term of this Agreement and for a period of three years thereafter constitutes and admission by Listing Broker that Listing Broker has used Consultant's Confidential Information and/or Trade Secret Information.

7. **Covenant Against Interference.**

Listing Broker agrees that during such time as Consultant is working with Listing Broker and a period of one year thereafter, Listing Broker will not, either voluntarily or involuntarily, for any reason whatsoever, directly or indirectly, individually or on behalf of others, raid, interfere with, or otherwise disrupt the relationship between Consultant and any of its employees, independent contractors, or agents. Consultant and Listing Broker acknowledge that in the event of a breach of this Section by Listing Broker, the Consultant will suffer irreparable harm and will be entitled to injunctive relief as well as all other remedies available at law or in equity.

8. **Covenant Against Derogatory Statements.**

Listing Broker agrees not to make and/or publish in any manner, any derogatory or adverse statements, written or verbal, regarding the Consultant or its owners, directors, officers, employees, independent contractors, agents, affiliates, successors and/or assigns, except as permitted by law, to anyone including, but not limited to the other's (or its successors and/or assigns) directors, officers, consultants, agents, vendors, existing clients, or potential clients.

9. **Reasonableness of Restrictions.**

Listing Broker and Consultant acknowledge that the Consultant's market for its products and services is unlimited geographically and that the restrictions set forth in this Agreement are reasonably necessary for the protection of the Consultant's legitimate propriety and economic interests.

10. **Modification of Agreement.**

This Agreement may be modified only upon the written consent of both Consultant and the Listing Broker.

11. **Entire Agreement.**

This Agreement constitutes the entire agreement between the parties concerning the matters expressly set forth herein. There are no agreements, understandings, restrictions, warranties, or representations between the parties relating to this subject matter other than those in this Agreement.

12. **Severability.**

If any term or provision of this Agreement or any portion thereof is declared illegal or unenforceable by any court of competent jurisdiction, such provision or portion thereof shall be deemed modified so as to render it enforceable, and to the extent such provision or portion thereof cannot be rendered enforceable, this Agreement shall be considered divisible as to such provision which shall become null and void, leaving the remainder of this Agreement in full force and effect.

13. Governing Law.

This Agreement shall in all respects be governed by and construed in accordance with the laws of the State of California regardless of the law of choice of law or conflicts of law of that or any other jurisdiction. Both parties agree to the exclusive jurisdiction and venue of the federal and state courts of San Diego County, California, with respect to any legal actions arising under, out of, in relation to, or brought to enforce, this Agreement.

14. Assignment and Successors.

Consultant and Listing Broker agree that the terms of this Agreement shall inure to the benefit of and may be enforced by the Listing Broker and Consultant and the Listing Broker's and Consultant's successors or assigns. Consultant and Listing Broker agree that the terms of this Agreement shall be binding upon Consultant, Listing Broker, and Listing Broker's subsidiaries, parent corporations, executors, administrators, legatees, distributees, and other successors in interest.

15. Payment of Costs and Attorneys Fees.

A party who breaches the terms of this Agreement shall pay to the non-defaulting party all of the non-defaulting party's costs and expenses, including attorneys' fees, incurred in enforcing the terms of the Agreement.

16. Opportunity for Review by Consultant's Outside Counsel.

Listing Broker is advised to seek expert professional legal, accounting and tax advice. Consultant and Listing Broker acknowledges that Consultant and Listing Broker have read this Agreement in its entirety, and have had ample opportunity to have legal and financial counsel review the Agreement, explain its provisions, and provide appropriate advice. The Parties agree that all information provided by Consultant pursuant to this Agreement and any business relationship arising out of or relating hereto is neither legal advice, nor intended to be legal advice, but instead is solely related to business and/or real estate issues.

17. Waiver of Breach.

The waiver by either party of a breach of any provisions of this Agreement by the other shall not operate or be construed as a waiver of any subsequent breach. A delay or failure by either party to exercise a right under this Agreement, or a partial or single exercise of that right, shall not constitute a waiver of that or any other right.

18. Obligations Survive Termination.

The obligations of Consultant and Listing Broker set forth in this Agreement shall survive the termination of the parties' working relationship. This agreement may not be terminated without the express written consent by both parties.

19. Notices.

All notices given hereunder will be in writing, delivered personally or mailed by registered or certified mail, return receipt requested, or delivered by well-recognized overnight mail.

If such notice is being delivered to the Consultant, such notice shall be delivered to Fractional Villas, Inc., c/o Gary Sirota, Esq., Coast Law Group, LLP, 169 Saxony Road, Suite 204, Encinitas, California 92024, or to such other address as either party may specify to the other from time to time.

If such notice is being delivered to the Listing Broker, such notice shall be delivered to:

### Love and Clapperton Coastal Properties

### 3865 Mission Blvd

### San Diego, CA 92109

All notices will be deemed given if delivered personally, on the day of delivery, if mailed by registered or certified mail, three days after the date of mailing, and if delivered by overnight mail, one day after mailing.

I have read and do hereby agree to be bound by the terms of this Agreement.

Consultant:

By _____    Date 11-26-07
Robert K. Vicino
President


Listing Broker

By _____    Date 4/7/07

Name _____    Its _____


Listing Agent

By Christine Clapperton    Date 4/13/07

Name _____    Its _____

**EXHIBIT F**

## BROKER COOPERATION AGREEMENT

This Agreement is dated as of **November 1, 2007,** (hereinafter the "Effective Date") by and between **Fractional Villas, Inc.** a California Corporation, and a California Department of Real Estate Corporate Licensee (hereinafter known as "Consultant"); and, **Love and Clapperton Coastal Properties,** a California licensed real estate broker, represented by sales agent **Chris Love** (hereinafter collectively known as "Broker"), of the property located at: **2663 Ocean Front Walk #3, San Diego, CA 92109** (hereinafter known as the "Property"), subject to the following recitals and agreements:

A. The Owner and Seller of the Property has entered into an agreement with Consultant for the purpose of offering the Property for sale as both a fractional interest property, and a single ownership property. In order to fulfill the wishes of the Owner/Seller, it is important for Broker and Consultant to cooperate. Broker and Consultant wish to fulfill the wishes of the Owner/Seller of the Property.

NOW, THEREFORE the parties agree as follows:

1. Broker shall meet with Consultant as necessary to learn from Consultant to obtain a comprehensive understanding of Consultant's Fractional Ownership Program, for the marketing and sale of the Property for fractional ownership, to a level of competence that Broker is able to professionally communicate the intended fractional ownership program to prospective Fractional Interest Buyer(s).

2. Broker shall cooperate in good faith with Consultant in the marketing, promotion, and sale of the Property to Fractional Interest Buyer(s) prospects, including conducting open houses for the promotion and sale of the property to Fractional Interest Buyer(s).

3. Broker shall disclose any prospect leads or parties with interest to Consultant, as and when each prospect or party with interest is identified for the Property.

4. Broker shall keep Consultant apprised of the progress of all negotiations with any Fractional Interest Buyer(s).

5. Broker shall provide Consultant with copies of all statutorily required documents related to the sale of the Property to any Fractional Interest Buyer(s).

6. If Consultant's Consulting Fee which has been negotiated between Seller and Consultant pursuant to a separate Consulting Agreement must be, in the sole discretion of Consultant, paid to Consultant through a transaction whereby the Fee is first paid to Broker, then Broker shall accept the sum constituting the Fee from Escrow, and thereafter pay any such sum equaling the Consulting Fee to Consultant immediately upon the close of any escrow where such Fee is paid. Broker agrees to execute all documents as may be required to carry out the intentions of the Parties as contemplated by this Agreement.

7. Consultant Compensation:

    a) In addition to any amount owed to Consultant by Seller, in the event the Property is purchased by one buyer, or by any number of fractional interest buyers, who are referred to the Property by Consultant, or for whom Consultant is the procuring cause of the buyer(s), Broker shall pay to Consultant 25% of the commission paid to Broker for sale of the Property, under the Listing Agreement for each and every buyer that purchases the Property, if said buyer(s) is not represented by a third party buyers' broker, or Broker is recognized as a Duel Agent in the sale.

8. Broker Compensation:

    a) Consultant shall pay Broker 20% of Consultant's Consulting Fee that Consultant receives from Seller at the time the Fee is realized by Consultant.

9. Broker shall earn and be paid all other amounts previously agreed upon between Broker and Seller under the existing Listing Agreement upon the close of escrow for the Property.

This Agreement, and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts. The undersigned parties hereby agree to the terms and conditions as provided above.

Consultant

By _____    Date _11-26-07_
Robert K. Vicino
President

Listing Broker

By _____    Date _11/7/07_
Name _____    Its _____

Listing Agent

By _____    Date _11/13/07_
Name _____    Its _____

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

FRACTIONAL VILLAS, INC., a California Corporation

**DEFENDANTS**

Reflections Private Residence Club, LLC; Reflections, an unknown entity; Christopher H. Zoukis; and DOES 1 - 50

*FILED*

**(b)** County of Residence of First Listed Plaintiff   **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   **Henderson**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Robert Berkowitz, COAST LAW GROUP, LLP
169 Saxony Road, #204 Encinitas, CA 92024 (760) 942-8505

Attorneys (If Known)

**'08 CV 1423 DMS AJB**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
17 U.S.C. section 101 et. seq.
Brief description of cause:
Copyright infringement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 950,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE  08/05/2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 153692   AMOUNT $350   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

TAC 8/5/08

**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 153692    — TC**

**August 05, 2008**
**16:04:49**

**Civ Fil Non-Pris**
USAO #.: 08CV1423
Judge..: DANA M SABRAW
Amount.:                    $350.00 CK
Check#.: BC4941

**Total—>  $350.00**

FROM: FRACTIONAL VILLAS
         VS.
         REFLECTIONS PRIVATE RESIDENCES

AO 121 (6/90)

| TO: |  |
|---|---|
| **Register of Copyrights**<br>**Copyright Office**<br>**Library of Congress**<br>**Washington, D.C. 20559** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION OR APPEAL**<br>**REGARDING A COPYRIGHT** |

In compliance with the provisions of 17 U.S.C. 508, you are hereby advised that a court action or appeal has been filed on the following copyright(s):

| ☐ ACTION | ☐ APPEAL | COURT NAME AND LOCATION |
|---|---|---|
| DOCKET NO.<br>08cv1423 | DATE FILED<br>8/5/08 | United States District Court, Southern District of California<br>880 Front Street, Room 4290<br>San Diego, CA  92101-8900 |
| PLAINTIFF<br>Fractional Villas, Inc. | | DEFENDANT<br>Reflections et al |

| COPYRIGHT<br>REGISTRATION  NO. | TITLE OF WORK | AUTHOR OF WORK |
|---|---|---|
| 1 TX 6-613-088 | Fractional Villas.com | Mr. Robert K. Vicino |
| 2 TX 6-834-962 | Priority Purchaser Reservation Agreement | Mr. Robert K. Vicino |
| 3 | | |
| 4 | | |
| 5 | | |

In the above-entitled case, the following copyright(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment    ☐ Answer    ☐ Cross Bill    ☐ Other Pleading | |
|---|---|---|
| **COPYRIGHT<br>REGISTRATION NO.** | **TITLE OF WORK** | **AUTHOR OF WORK** |
| 1 | | |
| 2 | | |
| 3 | | |

In the above-entitled case, a final decision was rendered on the date entered below.  A copy of the order or judgment together with the written opinion, if any, of the court is attached.

| COPY ATTACHED<br>☐ Order    ☐ Judgment | WRITTEN OPINION ATTACHED<br>☐ Yes    ☐ No | DATE RENDERED |
|---|---|---|
| CLERK | (BY) DEPUTY CLERK | DATE |

Copy 1 - Upon initiation of action, mail this copy to Register of Copyrights  Copy 2 - Upon filing of document adding copyrights, mail this copy to Register of Copyrights

Copy 3 - Upon termination of action, mail this copy to Register of Copyrights Copy 4 - In the event of appeal, forward this copy to the Appellate Court so they can prepare a new AO 279 for the appeal

Copy 5 - Case file copy